UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
                                                    :
GARY O. GILLARD, *pro se*,                          :
                                                    :
                              Plaintiff,   :   **MEMORANDUM AND ORDER**
                                                    :
                       -against-         :   00-cv-5945 (DLI) (MLO)
                                                    :
ROBERT J. GAFFNEY, VINCENT J. IARIA, JOHN           :
SCARGLATO, DEPARTMENT OF SOCIAL                     :
SERVICES, CORAM, N.Y., AND ROBERT S.                :
WLADYKA,                                            :
                                                    :
                        Defendants.     :
---------------------------------------------------------------- x

**DORA L. IRIZARRY, United States District Judge:**

On April 15, 2002, *pro se* plaintiff filed this civil rights claim under 42 U.S.C. § 1983, alleging that various state and county entities conspired to deny him custody of his child and subjected him to cruel and unusual punishment in violation of the First, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. (Am. Compl. ¶¶ 2, 36-37.)

Plaintiff alleges that his efforts to be awarded custody of a daughter that he had with his ex-girlfriend, Ms. Sharon Castro, were thwarted by a conspiracy that included not being told in which emergency shelter Ms. Castro was staying, and his indictment for sexually abusing Ms. Castro's nine-year-old daughter from a previous relationship. Defendants filed the instant summary judgment motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.

For the reasons set forth more fully below, defendants' motion is granted.

**I.    Background**

    *A. Facts*

The following facts are undisputed, or, where disputed, are construed in a light most favorable to plaintiff. Plaintiff claims that he and Ms. Castro have a daughter in common, who

was born on March 5, 1999. (Affirmation of Richard T. Dunne in Supp. of County Def.'s Mot. for Summ. J. ("Dunne Aff.") Ex. E.) On November 22, 1999, plaintiff allegedly had a telephone conversation with Ms. Castro during which he accused her of infidelity and threatened to "take" his alleged daughter from Ms. Castro once he was released from jail. (Am. Compl. ¶ 21.) At the time, plaintiff was incarcerated for violating parole in relation to a 1996 state court conviction for criminal sale of a controlled substance in the third degree. (*See* Am. Compl. ¶ 22; County Def.s' Statement Pursuant to Local Rule 56.1 ("56.1") ¶ 4; Dunne Aff. Ex. A.)

On December 8, 1999, Ms. Castro filed a report with the Suffolk County Police Department, alleging that plaintiff had sexually abused her older daughter from a previous relationship, who was nine years old at the time. (Dunne Aff. Ex. A.) The child was interviewed on December 9, 1999, and, the next day, two officers visited the Suffolk County Jail to interview plaintiff in connection with the sexual abuse allegations. Plaintiff claims that the officers "refuse [sic] to tell me why they want [sic] to talk to me untill [sic] I waved [sic] all my miranda [sic] rights, then I was asked if I did anything to the child of [Ms.] Castro, I stated no and that she was doing this so I could not get my daughter away from her." (Am. Compl. ¶ 23; *see also* Dunne Aff. Ex. A.) The case file was then turned over to the Family Crime Bureau for review. (Dunne Aff. Ex. A.)

On December 15, 1999, plaintiff petitioned the Suffolk County Family Court for joint custody with visitation rights of the daughter that he claims to have in common with Ms. Castro. (Dunne Aff. Ex. E.) This petition was rejected on December 21, 1999, based on the court's finding that plaintiff lacked standing to commence the proceedings and had not established paternity of the child at issue. (*Id.*)

The allegations with respect to plaintiff's sexual abuse of Ms. Castro's older daughter were presented to a grand jury. On January 4, 2000 (Dunne Ex. A), plaintiff was indicted for five

2

counts of sodomy in the first degree, one count of sexual abuse in the first degree, two counts of endangering the welfare of a child, and one count of assault in the third degree (Dunne Aff. Ex. C).

On September 27, 2000, while incarcerated as a pretrial detainee at the Suffolk County jail (Am. Compl. ¶ 7), plaintiff brought suit against defendants, essentially alleging that various state and county agencies and individuals conspired to prevent him from obtaining custody of his child. (56.1 ¶ 8.)

On December 28, 2000, plaintiff again petitioned for joint custody with visitation rights of his alleged daughter with Ms. Castro.[1] (Dunne Aff. Ex. D.) His petition was denied in January 2001 by a Suffolk County Family Court judge who found that: (1) there were insufficient factual allegations in the petition to warrant a hearing on custody or visitation, (2) the allegations in the petition were vague and conclusory, there being no specific facts, circumstances or incidents alleged, and (3) plaintiff did not appear capable of being a joint custodian due to his incarceration, and failed to explain how it would be in the child's best interest for the court to order visitation. (Dunne Aff. Ex. F.)

On March 8, 2001, after being convicted by a Suffolk County jury of all sex offenses arising out of his conduct with respect to Ms. Castro's older daughter, plaintiff was sentenced to an eighty-six-year prison term, which he is currently serving. (Dunne Aff. Ex. G.)

On April 15, 2002, plaintiff filed an amended complaint which serves as the basis for his current claim. Plaintiff alleges that he was deprived of his civil rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges that defendants "continuously communicated with the knowledge that

---

[1] Plaintiff indicates that on April 6, 2000, he took a DNA blood test to confirm the paternity of the child at issue. However, the results of the blood test are not part of the record, nor did either of the Family Court judges who considered plaintiff's petitions for joint custody corroborate plaintiff's claim that he has a daughter in common with Ms. Castro. Thus, the court makes no finding as to the paternity of the child, nor is such finding necessary for the court's determination of this motion.

the child was in fact my child and how [sic] they where [sic] going to help [Ms.] Castro keep this child away from me." (Am. Compl. ¶ 27.) Specifically, plaintiff claims that he was unable to serve Ms. Castro with his custody petition, because the Department of Social Services and the assistant district attorney in charge of prosecuting the sexual abuse case moved Ms. Castro to various shelters "in the hope of hiding" her from plaintiff. (*Id.* at ¶ 28.) He claims that he was not produced for scheduled court dates on a number of occasions, and was told that "I never proof [sic] I served the summons upon Miss Castro. Their [sic] was no way to proof [sic] this unless their [sic] was continuous contact between all parties within [sic] this Complaint which proves conspiracy to keep me out of the courts." (*Id.* at ¶ 29.)

Plaintiff argues that the alleged conspiracy "subjected the plaintiff to cruel and unusual punishment in violation of the First, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, and have [sic] caused plaintiff to suffer damages in the sum of three hundred million dollars." (Am. Compl. ¶¶ 36-37.) He further asks the court to exercise supplemental jurisdiction over unspecified "state claims against the defendants for common law violations." (Am. Compl. ¶ 5.)

### B. Procedural History and Parties

Plaintiffs's initial complaint was filed on September 27, 2000, and his amended complaint, which is currently before the court, was filed on April 15, 2002. The conspiracy allegations were primarily directed at the two Family Court judges and various support agencies and individuals who handled his custody petitions. The claims against defendants Robert M. O'Mara, Lois Pelosi, and John E. Raimondi—who provided information to the defendant judges with respect to the underlying custody petition in the course of their employment at Suffolk County Family Court—were dismissed with prejudice on November 18, 2002. The claims against the two

4

Family Court judges were similarly dismissed with prejudice on July 8, 2003.

On March 6, 2006, this court issued a Notice of Impending Dismissal, since no party had taken any action on the case since January 20, 2005. Thereafter, the court decided a number of motions filed by plaintiff, until the case was assigned to a visiting judge on October 27, 2006. Plaintiff had several other pending civil matters that were tried before the visiting judge, in which he did not prevail. After receiving permission from the visiting judge to move for summary judgment, defendants filed the instant motion on February 2, 2007. (*See* County Def.s' Mem. of Law in Supp. of Mot. Pursuant to Rule 56.1 (the "Motion" or "Mot.")) Plaintiff then made several requests for extensions of time in which to file his opposition. The visiting judge granted each request. Plaintiff also filed several other motions that the visiting judge considered and denied. Ultimately, plaintiff's opposition to the motion was due December 24, 2007. The case was reassigned to this court on November 14, 2008, and since no opposition was filed to defendant's summary judgment motion, the motion was deemed unopposed on April 1, 2009.

The remaining defendants in this case include the Suffolk County Department of Social Services, and its employees Vincent J. Iaria and Robert S. Wladyka. The Department of Social Services and defendants Iaria and Wladyka provided information to the judges who heard plaintiff's petitions pursuant to their respective duties. (Am. Compl. ¶¶ 9, 17.) Defendant Catherine DeSanto is alleged to have been retained as counsel by Ms. Castro to represent her in the custody proceedings. (Comp. ¶ 26.) Plaintiff further names defendant John Scarglato, the assistant district attorney in the sexual abuse case, suggesting the prosecution was part of the larger conspiracy to prevent him from gaining custody of his child. (Am. Compl. ¶ 28.) Finally, the complaint names the Child Support Enforcement Bureau and defendant Robert J. Gaffney,

5

the county executive for Suffolk County at the time of the purported conspiracy, but fails to allege any actions taken by these parties. (Am. Compl. ¶¶ 8, 16.)

### C. Defendants' Motion for Summary Judgment

Defendants Gaffney, Iaria, Scarglato, Wladyka, and the Department of Social Services (the "county defendants") have moved for summary judgment on various grounds. First, the county defendants argue that plaintiff failed to make specific factual allegations detailing each defendant's purported actions, as he must, to establish the existence of a conspiracy. (Mot. at 2.) Second, defendants Iaria and Wladyka argue that the court should dismiss plaintiff's claim under the doctrine of *res judicata*, based on the dismissal of their counterparts in the State agency that provided information with respect to the underlying custody petition. (*Id*. at 3.) Third, county defendants argue that Scarglato is protected by the doctrine of absolute immunity. (*Id*. at 4.) Finally, to the extent that the conspiracy allegations encompass plaintiff's indictment and conviction, county defendants argue that that the complaint must be dismissed as a collateral attack on his valid state conviction. (*Id*. at 5-7.)

## II. Standard of Review

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007). The nonmoving party may not rely on "[c]onclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir. 1998), but must affirmatively "set out specific facts showing a genuine issue for trial," Fed. R. Civ. P. 56(e).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 127 S. Ct. at 1776. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship.*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir. 1988)).

The court holds *pro se* pleadings to "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (citation omitted). It will "interpret that [plaintiff's] supporting papers liberally, that is, 'interpret them to raise the strongest arguments that they suggest.'" *Forsyth v. Fed'n Employment and Guidance Serv.*, 409 F.3d 565, 569 (2d Cir. 2005) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Though a court need not act as an advocate for *pro se* litigants, in such cases "there is a greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done." *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998) (citation omitted).

**III. Discussion**

*A. Conspiracy Claim*

To prove a conspiracy under 42 U.S.C. § 1983, a plaintiff must show: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal

7

causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). The Second Circuit has recognized that "conspiracies are by their very nature secretive operations," and "may have to be proven by circumstantial, rather than direct, evidence." *Id.* at 72 (citation omitted). Even so, "[i]t is incumbent on a plaintiff to state more than conclusory allegations to avoid dismissal of a claim predicated on a conspiracy to deprive him of his constitutional rights." *Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir. 1990). "Diffuse and expansive allegations are insufficient" to sustain a conspiracy claim, "unless amplified by specific instances of misconduct." *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002).

The county defendants contend that "even when plaintiff's complaint is viewed in the light most favorable to plaintiff, it is woefully lacking in any specific factual allegations or overt acts that could even be remotely considered a colorable federal claim." (Mot. at 2.) They further argue that such lack of factual specificity warrants the dismissal of plaintiff's claim against all remaining defendants. (*Id.*) The court agrees.

The crux of plaintiffs' complaint appears to be that:

> Upon numerous petition [sic] for visitation I was given court dates then [Ms.] Castro would be moved from shelter to shelter upon each petition being filed, when I wrote asking why I was not produced for court I was told I never proof [sic] I served the summons upon Miss Castro. Their [sic] was no way to proof [sic] this unless their [sic] was continuous contact between all parties within [sic] this complaint which proves conspiracy to keep me out of the courts.

Am. Compl. ¶ 29. The complaint, however, fails to show any nexus between the alleged agreement to act in concert to bar plaintiff from the court system (thus blocking his attempts to obtain custody of his alleged daughter), and the acts of the defendants.

The single allegation against defendant Wladyha is that he wrote to plaintiff, denying his request for help from the Department of Social Services in locating Ms. Castro to serve his summons. (*Id.* at ¶ 33.) The only allegation against defendant Iaria is that he informed plaintiff

about a scheduled court date. (*Id*. at ¶ 28.)[2] With respect to defendant De Santo, plaintiff claims that she (1) served as Ms. Castro's attorney in connection with plaintiff's petition for custody and informed plaintiff that he had "no proof this child was mine theirfor [sic] wanting the petition dismissed" (*id.* at ¶ 26); and (2) allegedly received correspondence rescheduling a court date from the Family Court clerk (*id.* at ¶ 28). The Child Support Enforcement Bureau and the Department of Social Services are alleged to have "failed to follow state and federal laws by not filing a support action against my person and failed to collect the money for D.N.A. test [sic] all so I could not have visitations of my child." (*Id*. ¶ 34.) With respect to defendant Scarglato, plaintiff states "all parties conspired, knowingly and willing [sic] and collectively at the request of John Scarglato A.D.A. [sic] of Suffolk County Court on behalf of Ms. Sharon Castro." (*Id*. at ¶ 34. Plaintiff further claims that Ms. Castro "was moved" to various homeless shelters, to block plaintiff's attempts to serve her, "by [sic] request of A.D.A. John Scarglato and the Department of Social Services."[3] (*Id*. at ¶ 28.) Finally, although the complaint names defendant Gaffney, it does not contain a single allegation against him.

The complaint fails to specify how any of defendants' alleged acts violate his constitutional rights, or, indeed, are tantamount to any sort of misconduct, either independently or in conjunction with each other. Further, the complaint fails to allege specific facts showing that

---

[2] Plaintiff's claims against defendants Iaria and Wladyka are barred by *res judicata*, or claim preclusion, which dictates that a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *see also St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir. 2000). A district court judge has already dismissed the state counterparts of defendants Iaria and Wladyka, who were ostensibly providing the same type of support services to the Family Court. (Mot. at 3.) Plaintiff does not allege any facts or offer evidence to distinguish the role of defendants Iaria and Wladyka from that of their state counterparts, which warrants dismissal of these claims.

[3] Even if plaintiff had properly stated a claim Scarglato, he has prosecutorial immunity. *See Imbler v. Pachtman,* 424 U.S. 409, 430 (1976) (holding that prosecutors enjoy absolute immunity from liability under § 1983 in suits seeking damages for acts carried out in their prosecutorial capacities.); *Doe v. Phillips*, 81 F.3d 1204, 1210 (2d Cir. 1996)(same). There is no allegation that Scarglato acted outside the scope of his prosecutorial role as assistant district attorney. Thus, plaintiff is precluded from obtaining monetary relief against him. *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

defendants agreed to act in concert to divest plaintiff of his constitutional rights. Moreover, the record is entirely devoid of supporting materials lending credence to the conspiracy claims. Plaintiff cannot sustain his claim by relying on vague, conclusory allegations of a conspiracy without pleading any overt acts or providing a factual basis for his claim. *See, e.g.*, *Polur*, 912 F.2d at 56. Accordingly, the court dismisses the complaint in its entirety.

### B. Collateral Attack on Conviction

Plaintiff seeks money damages, but does not explicitly contest the terms of his still-valid state conviction for sexually abusing Ms. Castro's older daughter. It nevertheless can be inferred that plaintiff regards his prosecution for sodomy as part of a larger conspiracy by defendants to deprive him of custody of his child. Even if the court were to construe plaintiff's complaint as a challenge to the constitutionality of his sentence, plaintiff would not prevail for two reasons.

First, the court can only consider release from custody on a petition for a writ of habeas corpus under 28 U.S.C. § 2254. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (when a prisoner challenges "the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."). Since plaintiff's exclusive remedy for release is a petition for a writ of habeas corpus, plaintiff has failed to establish that he is entitled to relief under 42 U.S.C. § 1983.

Second, plaintiff has failed to prove that the sentence "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance or a writ of habeas corpus," as

he must to recover damages for allegedly unconstitutional conviction or imprisonment under *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).[4]

### C. Review of Denial of Custody by Family Court Judges

To the extent that plaintiff's request for an assertion of jurisdiction over "common law violations" includes a review of the custody decisions of the Family Court judges, this request is denied. (*See* Am. Compl. ¶ 5.) In *Ankenbrandt v. Richards*, 504 U.S. 689 (1992), the Supreme Court held that the domestic relations exception to federal jurisdiction "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Id*. at 703. In an unpublished opinion, the Second Circuit stated that the domestic relation exception applies generally to "issues relating to the custody of minors, and "includes civil rights actions directed at challenging the results of domestic relations proceedings." *Mitchell-Angel v. Cronin*, No. 95-7937, 1996 WL 107300, at *2 (2d Cir. March 8, 1996).[5] While *Ankenbrandt* concerned the federal courts' diversity jurisdiction, this exception also has been applied to federal question jurisdiction. *See, e.g.*, *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir.1990).

---

[4] Defendants represent that plaintiff purposefully abandoned his notice of intent to appeal to the Second Department, and that he is thus barred from attacking his conviction by the doctrine of exhaustion, which precludes judicial relief until available state remedies are exhausted. *See Booth v. Churner*, 532 U.S. 731, 740 (2001). The record does not contain any evidence allowing the court to consider the merits of this claim, and, at summary judgment, the court must construe all disputed facts in favor of plaintiff.

[5] Like the plaintiff in *Mitchell-Angel*, plaintiff here alleges that defendants were engaged in a conspiracy to "deprive [him] of [his] child['s] companionship and affections," which relates "solely to the appropriateness of the child custody decree." 1996 WL 107300, at *2; *see also, e.g., Melnick v. Adelson-Melnick,* 346 F.Supp.2d 499, 505 (S.D.N.Y. Nov. 15, 2004) (finding that a claim involving "factual disputes concerning custody" was "'on the verge' of a matrimonial dispute" and thus "a paradigmatic one for abstention."); *Rabinowitz v. New York,* 329 F.Supp.2d 373, 376 (E.D.N.Y.2004) (refusing to exercise jurisdiction where plaintiff sought "the same relief he sought in state court, namely, custody of his children. If this Court were to allow the plaintiff to pursue this action, it would be forced to 're-examine and re-interpret all the evidence brought before the state court' in the earlier proceedings."); *Torres v. Family Court/Admin. for Children's Servs.,* 01 Civ. 4351, 2001 WL 1111510 at *2 (S.D.N.Y. Sept. 20, 2001) ("[D]istrict courts in this circuit have held that the [domestic relations] exception includes civil rights actions directed at challenging the results of domestic relations proceedings . . . . Though [plaintiff's] claims are brought pursuant to 42 U.S.C. § 1983, this Court will not intervene in ongoing state proceedings.").

Therefore, the court lacks jurisdiction to review the propriety of the Family Court's determination with respect to plaintiff's custody petitions.

## III. Conclusion

For the foregoing reasons, all claims against the remaining defendants in this action are dismissed. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
July 9, 2009

_____/s/_____
DORA L. IRIZARRY
United States District Judge